CASE 87—PETITION EQUITY—FEBRUARY 11.

# Spalding, Tax Collector, v. Hill.

### APPEAL FROM MARION CIRCUIT COURT.

CONSTITUTIONAL LAW—STATE BOARD OF EQUALIZATION.—There is no constitutional objection to the act approved May 10, 1884, creating the State Board of Equalization and defining its powers. Equality and uniformity are essential to the constitutionality of taxation, and the State Board of Equalization is designed to accomplish this end as nearly as may be, while the powers conferred upon the Board are clearly adapted to the accomplishment of the end designed. It is no objection to the act that it does not provide for notice to the tax-payers of the meeting of the Board. The act requires that the Board shall meet at a specified time and place, of which meeting the property-holders must take notice.

SAM. T. SPALDING FOR APPELLANT.

1. The act creating the State Board of Equalization is not unconstitutional. The functions of the Board do not encroach upon the functions of the assessors. (Pennington v. Woolfolk, 79 Ky., 16; Sav. Loan Society v. Austin, 46 Cal., 472; Houghton v. Austin, 46 Cal., 946; W., F. & Co. v. Board of Equalization, 56 Cal., 196; People v. Dunn, Auditor, 59 Cal., 318; People ex rel. Crawford v. Lathrop, &c., 3 Col., 460; People v. Solomon, 46 Ill., 334; Porter et al. v. R. R. I. & St. L. K. R. Co., 6 Ill., 561; Republic Life Ins. Co. v. Pollock et al., 75 Ill., 292; Barbour v. Goodloe, MS. Op., Feb. 5, 1885.)

   A legislative enactment will not be declared invalid unless it clearly appears that it is in conflict with the Constitution. (Cooley's Const. Limit., side page 159; Burroughs on Taxation, sec. 10; Potter's Dwarris on Statutes, p. 65; Brown v. Buzan, 24 Ind., 194; Lafayette, &c., R. R. Co. v. Guyer, 34 Ind., 185; Groesch v. State, 42 Ind., 547; Maize v. The State, 4 Ind., 342; Anderson v. Cardwell, 91 Ind., 452; Stewart v. Stewart, 2 Mo., 85; Cain v. Cain, 14 Bush, 525; Williams v. Commonwealth, 78 Ky., 93.)

2. The action of the County Board of Supervisors, even if judicial, does not bar the action of the State Board of Equalization. (State v. Jersey City, 24 N. J. L., 662, 666; Griffin v. Mixon, 38 Miss., 438; Billinger v. Gray, 51 N. Y., 610.)

3. The law fixes the day the Board meets, and that is sufficient notice of its sittings. (Taylor, Collector, et al., v. Lecer et al., 92 U. S., 609; Hamilton v. Dempsey, &c., 20 Ohio, 173; Mixon v. People, 30 N. J.,

Spalding, Tax Collector, v. Hill.

58; Desty on Taxation, vol. 1, p. 600; Gulf, &c., v. Shepard, 9 Kan.,
655; O'Neil v. Bridge Co., 18 Md., 23; Vail v. Rumire, 41 N. J. L.,
98; Pritchard v. Marden, 24 Kan., 492; Fudge v. Fudge, 23 Kan.,
416; County Clare v. Southern Pacific R. R. Co., 18 Fed. Rep.; L. &
N. R. R. Co. v. Commonwealth, 81 Ky., 492; L., C. & L. R. R. Co. v.
Corn, 10 Bush, 43; Hager v. Reclamation Dist., 111 U. S., 710; 96
U. S., 104; Hortade v. California, 110 U. S., 516, 536; McMillen v.
Anderson, 95 U. S., 37; Hugh v. Shoemaker, 22 Cal., 370; State ex
rel v. Lindell Hotel Co., 9 Mo. App., 458; Weaver v. Bamberg, 30
Mich., 211 and 216; Griffin v. Dagon & Martin, 48 Miss., 17; Doe ex
dem Gladner v. Derrus, 11 Ga., 82; People v. Brooklyn, 4 N. Y., 419,
31 N. Y., 579; 2 Dutch., 398; 24 Am. Dec., 542; Cooley on Taxation,
39, 40, Thompson v. Doty, 72 Ind., 339; Davidson v. New Orleans,
96 U. S., 105; Campbell v. Driggins, 83 Ind., 481; Stuart v. Palmer,
74 N. Y., 183.)

4. The Board may act upon its own knowledge, without any evidence
whatever, except the books before it   (Taylor, Collector, et al., v.
Lecer et al., 92 U. S., 600, 610; K. P. Riley Co. v. Commissioner, 20
Kan., 144; Auditor v. A., T. & S. F. R. R. Co., 6 Kan, 500; Hamil-
ton v. Dempsey, &c., 20 Ohio, 173; McIntire v. The Town, 43 Wis.,
620; State R. R. Cases, 2 Otto, 575, 610; L., C. & L. R. R. Co. v.
Commonwealth, 7 Bush, 255; L., C. & L. R. R. Co. v. Commonwealth,
10 Bush, 49; L. & N. R. R. Co. v. Commonwealth, 1 Bush, 250.)

5. The board may place a different rate of increase or decrease upon
different classes of property.  To make the law valid it is only nec-
essary that the rate be the same upon all property of the same class.
(City of Lexington v. McQuillan's Heirs, 9 Dana, 518; Youngblood
v. Sexton, 32 Mich., 415; St. Louis v. Ferry Co., 11 Wall., 429; State
Tax on Foreign Held Bonds, 15 Wall., 319; State Railroad Cases, 11
Otto, 611.)

6. The State Board of Equalization is a judicial tribunal, and its decisions
and proceedings can not be reviewed by a court of equity.  The tax-
payer has no redress for any irregularity or wrong assessment made
by that Board unless it was fraudulently done.  (Clinton School Dis-
trict Appeal, 56 Penn., 315; Stewart v. Maple, 70 Penn., 221; Adsit
v. Leib et al., 76 Ill., 198; C., B. & Q. R R. Co. v. Liders, 88 Ill., 320;
I. & G. N. R. R. Co. v. Lumber Co. et al., 54 Tex., 15; Brown v.
Smith, 24 Barb., •419; Weaver v. Davenport, 3 Denio, 117; Rhodes
et al. v. Cushman, Auditor, 45 Ind., 85; Ryan v. Vargar, 37 Iowa,
80; Bank v. City, 53 N. Y., 53; Nixon v. Ruple, 30 N. J. L., 60;
Howe v. City of Boston, 7 Cush., 273; Bates v. City of Boston, 5
Cush., 96; Osborn v. Danvers, 6 Pick., 99; 2 Desty on Taxation, 55,
65, 622, 650, 665; Osborn v. The Inhabitants, 6 Pick., 98; Hughes v.
Kline, 30 Penn. St., 227; Wharton v. Birmingham, 37 Penn. St.,
371; Macklot v. City of Davenport, 17 Iowa, 379; Cooley on Taxa-

tion, 532-33-27; Stokes v. Kenner, 11 Wis., 389; Alleman v. Roth, 12 Wis., 91; Arnold v. Middleton, 39 Conn., 401; Dodd v. City of Hartford, 25 Conn., 232; Dows v. Chicago, 11 Wall., 108; 15 Wall., 548; Hilliard on Taxation, pages 419, 338, 350, 446; Brooks v. Shelton, 47 Miss., 245; Spencer v. People, 68 Ill., 510; 92 U. S., 613; Luston v. Mayor, 53 Ga., 589; Nugent v. Bates, 51 Iowa, 80; Powers v. Bowman, 53 Iowa, 361; Flournoy v. The City, 14 Ind., 174; Governor v. The State, 72 Ind., 578; Parks v. City of Boston, 8 Pick., 226; Longfellow v. Quinby, 19 Me., 202; High on Injunctions, sec. 1311; Board of Liquidation v. McComb, 2 Otto, 531; Gibbs v. County Commissioners, 19 Pick., 299; Chase v. The Blackstone Co., 10 Pick., 245; U. S. v. Lawrence, 3 Dallas, 42; Gray, Governor, v. The State, 72 Ind., 577; 2 Dillon Corp., 118, 120; High on Ext. Legal Remedies, secs. 141, 136, 97, 149, 150, 152; Livingston v. Hollenback, 4 Barb., 9; Horn v. Green, 52 Miss., 456; Bill v. Peru, 48 Barb., 51; Western R. R. Co. v. Sup., 48 N. Y., 513; C., B. Q. R. R. Co. v. Lider, 88 Ill., 320.)

RIVES & SPALDING FOR APPELLEE.

The act of May 10, 1884, establishing the State Board of Equalization, and their proceedings under it, are unconstitutional and void.

Where a tax is levied upon property in proportion to values to be ascertained by officers appointed or elected for the purpose, they act judicially, and can not be clothed with arbitrary power to secretly assess one for any amount in their discretion without giving him an opportunity to contest the justice of the assessment. And while it is not necessary that the hearing be given before the assessment is made, it must be at some time before the charge is fully and finally established. (Cooley on Taxation, page 40, note 2, and pages 41, 265; Hager v. Reclamation District, No. 108, 111 U. S., 710-711; Marshall v. McDaniel, 12 Bush, 384; Constitution of Ky., art. 6, section 11; Bill of Rights, sec. 24.)

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

The State Board of Equalization, at its regular session as fixed by law, increased the value of the land of Marion county, as fixed by the assessor of that county, thirteen per cent. The said Board also increased the value of personal property, as fixed by the assessor, thirty per cent.

The appellee instituted this action in the Marion Circuit Court to enjoin the appellant, as collector of

the State taxes in Marion county, from collecting the State tax on her real and personal property in said county in excess of the values fixed thereon by the county assessor. The chancellor, upon the hearing, perpetually enjoined the appellant from collecting this tax. He has appealed to this court.

It is conceded that the State Board of Equalization proceeded strictly in accordance with its powers under the act approved May 10, 1884, creating the Board and defining its powers. But the appellee. contends that this act is unconstitutional, and the lower court sustained that contention.. Under the law for assessing real and personal property in this State for taxation, the owner is required to list it, under oath, with the assessor of his county. The assessor, upon his own knowledge and other evidence, usually the oath of the owner being all that is required, fixes a valuation upon it. The county board of supervisors, consisting of three citizens and tax-payers of the county, and appointed by the county court, revise the assessment roll as returned by the assessor. It is the duty of this board to correct any error of the assessor in relation to the valuation he has placed upon the property of the citizen, and when his property has not been correctly assessed, to·fix a proper value upon it. The act of May 10, 1884, provides for the election of a Board of Equalization. This Board consists of a member elected from each congressional district of the State. The members are required to meet in the city of Frankfort at stated times. At their meeting, they are required to examine the assessment rolls of each county of the State, and to classify the assessed property of

the State into three classes; first, personal property; second, lands; third, town and city lots. They are then to ascertain the value of each class of property in each county, and to equalize the value of the same. This is done by increasing the value of any or all of said classes in any county where such classes have been assessed too low, and by decreasing the assessed value of any or all of these classes in any county where such classes have been taxed too high. But they have not the power to increase or decrease the total valuation in the State. Their power is limited to equalizing the value of said classes of property among the several counties of the State, so as to arrive, as nearly as may be, at the true value of each class of property in each county of the State, in order that it may bear its just proportion of the burden of taxation.

The Constitution of the State requires that a county assessor shall be elected every four years, but his duties are not prescribed by that instrument. His duties were wisely left to be prescribed by law. It is conceded that "in all cases of taxes by valuation, an assessment is indispensable and primary. It lies at the foundation of the proceeding." But the action of the assessor in making the assessment is not necessarily final. His action is *ex parte*. It is true that the law authorizing the assessment may make his action final; but it is not necessarily final by virtue of his office. From the earliest history of the State, assessors have been employed for the purpose of making the primary valuation of the property in the several counties of the State. But at no period in the history of the State has the action of the assessors been regarded by the law-making power

as necessarily final; for laws have been passed, time and again, creating county boards of supervisors, with the power to increase or decrease the value placed upon the citizen's property by the assessor.

It is the settled doctrine of this State that, for the purpose of taxation, property must be assessed according to its true value; that each citizen must contribute to the support of the State government, according to the value of his property; that equality of burden is essential to the correct administration of the government. But it is a fact known by all, that for years past the grossest inequalities have existed in the value fixed upon all kinds of property by the county assessors; and that the county boards of supervisors have failed to correct the evil. In some counties, it is said that assessors secure their elections by pledges made to assess the property in the county, or certain kinds of it, at a low value. In creating the State Board of Equalization, the object was to correct this evil, and to have the assessment of taxes in the several counties equalized according to the value of the property therein, so that the State government might be supported by just and equal taxation. As before stated, the value fixed upon the property in the county, by the assessor, is not final. It is primary merely. The county supervisors are appointed to revise and correct the assessment rolls as returned by the county assessors.

So the State Board of Equalization is yet a higher and final authority, whose duty it is to examine into the assessment of the several counties, and, in case the assessment of one or more counties is found to be relatively higher or lower than other counties, to

equalize the taxes among the several counties according to the value of the property therein. This Board is simply a higher and final power, selected by the people for the purpose of revising and correcting the errors of the county assessors, whether consisting in fixing the county assessments relatively too high or too low, in order that the property in the State may be taxed according to its value. Equality and uniformity are essential to the constitutionality of taxation, and as the State Board of Equalization is designed to accomplish this object, as nearly as may be, by distributing the burden of taxation among the several counties of the State according to the value of the property therein, and as the powers conferred upon the Board are clearly adapted to this purpose, we see no constitutional objection to the act. (Sav. and Loan Society v. Austin, 46 Cal., 473; Cin., N. O. & Texas Pacific R. R. Co. v. Commonwealth, 81 Ky., 493.)

The objection urged that the act requires no notice to be given to the people of the several counties that the Board will pass upon the question of increasing or decreasing the assessed value of their property, is answered in the case last cited. It may here be added that the Board operates upon the counties, and not directly upon the individual citizen; and the act requires that the Board shall meet at a specified time and place, of which meeting the property-holders must take notice.

The judgment of the lower court is reversed, with directions for further proceedings consistent with this opinion.